IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOHAMAD HARIRI,

        Plaintiff,

                                    3:15-CV-1076-PK

v.                                  OPINION AND
                                    ORDER

PORTLAND STATE UNIVERSITY and
GWEN SHUSTERMAN,

        Defendants.

PAPAK, Magistrate Judge:

        Plaintiff Mohamad Hariri filed this action against defendants Portland State University

("PSU") and PSU professor Gwen Shusterman (in both her official and her individual capacities)

on June 17, 2015. By and through his complaint, Hariri alleges that he was baselessly accused of

Page 1 - OPINION AND ORDER

academic misconduct, in consequence of which he was suspended for one year from attendance at PSU and received a lower than deserved grade in one of his classes. Arising out of the foregoing, Hariri appears to allege both defendants' liability under 42 U.S.C. § 1983 for race, color, and/or national origin discrimination in violation of his rights under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*) (Hariri's "Claim 1"), under Section 1983 for violation of his Fourteenth Amendment substantive due process rights (Hariri's "Claim 2"), and under Oregon common law for intentional infliction of emotional distress (Hariri's "Claim 3"). Hariri seeks (i) award of $155,338 in economic damages plus "an additional amount of economic damages for Plaintiff's [unspecified] out of pocket medical expenses to be determined at trial," $100,000 in non-economic damages for pain, suffering, and emotional distress, and punitive damages against PSU and Shusterman in her individual capacity in the total amount of $300,000, (ii) award of pre-judgment interest on all such money damages, (iii) award of his attorney fees and costs, and (iv) injunctive relief requiring defendants to reverse his suspension, raise his grade in one of his classes, expunge the accusation of misconduct and the suspension from his academic record, train all "managers and HR staff" at PSU to undergo counseling and training regarding illegal discrimination, and update PSU policies regarding "treatment of minorities." This court has federal-question jurisdiction over Hariri's discrimination and substantive due process claims pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental jurisdiction over Hariri's state-law claim pursuant to 28 U.S.C. § 1367.

Now before the court is defendants' motion (#20) for summary judgment. As discussed below, shortly after defendants filed their motion, the parties agreed to defer proceedings in connection with defendants' evidence-based arguments in support of their position that they are

Page 2 - OPINION AND ORDER

entitled to summary judgment in their favor as to all of Hariri's claims, pending the production of certain documents in discovery, and to proceed at this time only in connection with a limited number of purely (or nearly purely) legal arguments raised by the parties in support of their respective positions.  Also as discussed below, by and through his memorandum filed in opposition to defendants' motion, Hariri conceded that his intentional infliction and substantive due process claims had been improvidently brought, and at oral argument in connection with defendants' motion, Hariri expressly stipulated to those claims' dismissal with prejudice.  Also as discussed below, Hariri advised the court in the course of oral argument that (despite the manner of its pleading) he intends his discrimination claim to arise under Title VI rather than under Section 1983, and that he in consequence stipulated to dismissal with prejudice of the discrimination claim to the extent it could be construed as arising under Section 1983.

I have considered defendants' motion, oral argument on behalf of the parties, and all of the pleadings and papers on file.  For the reasons set forth below, (i) pursuant to Hariri's stipulations, the motion is granted as to Hariri's substantive due process and intentional infliction claims, and those claims (Claim 2 and Claim 3) are in consequence dismissed with prejudice, (ii) also pursuant to Hariri's stipulations, the motion is further granted as to Hariri's discrimination claim to the extent that claim may be construed as arising under Section 1983, and that claim (Claim 1) is in consequence dismissed with prejudice to that extent, (iii) the motion is additionally granted on its merits as to Hariri's discrimination claim to the extent that claim is alleged against Shusterman, and that claim (Claim 1) is in consequence likewise dismissed with prejudice to that extent, (iv) the motion is denied on its merits with leave to refile if appropriate at a later stage of these proceedings to the extent it addresses the immunity of PSU or of

Page 3 - OPINION AND ORDER

Shusterman in her official capacity from suit under the Eleventh Amendment or addresses PSU's personhood for purposes of Section 1983, (v) the motion is denied as moot with leave to refile if appropriate at a later stage of these proceedings to the extent it addresses Shusterman's assertion of qualified immunity in her individual capacity, and (vi) proceedings in connection with the arguments raised by and through defendants' motion are otherwise deferred until a later stage of these proceedings as discussed below.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position either by citation to specific evidence of record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," by showing that the evidence of record does not establish either the presence or absence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the

Page 4 - OPINION AND ORDER

United States must draw all reasonable inferences in favor of the nonmoving party, and may

neither make credibility determinations nor perform any weighing of the evidence. *See, e.g.,*

*Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing*

*Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND

### I.      The Parties

Plaintiff Hariri is an American of Arab descent, specifically of Lebanese and Syrian

ancestry.  Defendant PSU is a public, nonprofit educational institution receiving a portion of its

funding from the State of Oregon and, apparently, a portion of its funding from the federal

government.  Defendant Shusterman is a PSU chemistry professor who was Hariri's instructor in

Chemistry 221 in the Fall 2014 quarter, when Hariri attended PSU as a post-baccalaureate

student.

### II.     Material Factual History

Although the motion now before the court is one for summary judgment, as noted above

(and as discussed in greater detail below) because the parties stipulated to deferral of proceedings

in connection with the parties' evidence-based arguments in support of their respective positions

on the issues raised by defendants' motion, I do not at this time consider defendants' extensive

evidentiary proffer in analyzing the merits of the arguments addressed herein.  The following

recital of the history underlying the parties' dispute should accordingly not be considered as

containing any formal factual findings, but rather is provided solely for purposes of describing

the context within which the parties' legal disagreement will be analyzed.

Hariri alleges that, at all material times, he was either a current or a former student of

PSU. Defendants offer evidence, which Hariri does not appear to dispute, tending to establish more specifically as follows. Hariri enrolled as a full-time undergraduate student at PSU in Fall 2009, prior to which he spent two academic years as an undergraduate studying at a community college in Oregon. Although Hariri received failing grades, only marginally passing grades, and marks indicating the absence of any basis for evaluating academic performance in some of his coursework, he ultimately graduated from PSU with a bachelor's degree in general science in 2013. After graduation from PSU, Hariri applied unsuccessfully to dental schools, during the course of which process he learned that the presence of failing grades on his college transcript could negatively impact his applications. In consequence, beginning in 2014 Hariri began petitioning PSU for the right both to expunge from his transcript courses in which he completed none of the work and to retake classes in which he received failing or nearly failing grades. PSU denied several such petitions, but in September 2014 eventually granted one such petition to retake four courses in which he had previously performed poorly. In Fall 2014, Hariri enrolled at PSU as a post-baccalaureate student for the purpose of retaking those four courses.

As Hariri alleges, and as defendants' proffer tends to establish, among the courses Hariri retook in Fall 2014 was General Chemistry I, also known as Chemistry 221, which was taught by Professor Shusterman. According to defendants' proffer, over 300 students were enrolled in Chemistry 221 in that quarter, with the consequence that the students were divided into groups of approximately 20, each of which was assigned a "learning assistant" or "LA." According to defendants' proffer, the learning assistant assigned to Hariri's section was Dillon Willis. Also according to defendants' proffer, it was Shusterman's independently promulgated written policy to require students to bring photographic identification documents to the final exam in Chemistry

221, due to the large number of registered students. (By contrast, Hariri alleges that it was not Shusterman's but rather PSU's policy in general to require students to bring proof of identification to final exams.) Also according to defendants' proffer, Chemistry 221 students were under notice that the final exam could be rescheduled for students who had a conflict with the regular schedule.

As Hariri alleges, and as defendants' proffer tends to establish, the final exam for Chemistry 221 was given on December 8, 2014. Hariri alleges that he took the exam with all the other students on December 8, 2014. He further alleges that during the course of taking the exam, he witnessed Shusterman have a physical altercation with another student of Arab origin, accusing the student of cheating and personally effecting his violent ejection from the exam room. He further alleges that when he attempted to hand in his exam, the learning assistant would not accept the exam because Hariri had forgotten to bring proof of identification. He further alleges that he did not have time to explain the situation to Shusterman, because his father was in hospital and he had to leave immediately.

By contrast, defendants offer Shusterman's and Willis' testimony tending to establish that toward the end of the exam period a person of Asian rather than of Arab origin attempted to hand in to Willis an exam bearing Hariri's name, that Willis immediately recognized that the person attempting to hand in the exam was not Hariri, that Willis asked to see the person's proof of identification and received the response that the person did not have it with him, that Willis asked the student to follow him to where Shusterman was sitting to discuss the matter with her, and that when Willis looked to see if the person was following him as requested, the person had disappeared. In support of their position that Shusterman's and Willis' testimony is accurate,

Page 7 - OPINION AND ORDER

defendants additionally offer into evidence numerous samples of Hariri's handwriting together with the handwritten exam of December 8, 2014, and the opinion testimony of a handwriting expert that the person who wrote the exam of December 8, 2014, is not the same person who produced the samples of Hariri's handwriting.

Hariri alleges that Shusterman emailed him that same day to advise him that she would be giving him a grade of "0" on the exam. The parties appear to agree that Shusterman ultimately did give Hariri a "0" grade on the exam, but that he nevertheless passed the course with a final grade of "D," due to having performed well in other coursework prior to taking the final exam.

Defendants proffer evidence tending to establish that Shusterman emailed Hariri to advise him of Willis' report that another person had taken Hariri's exam in Hariri's stead. According to the proffered documentary evidence of email communications between Hariri and Schusterman on December 8, 2014, Hariri claimed to have been the person who wrote the exam bearing his name earlier that same day, and that he had needed to leave the exam room immediately after finishing the exam to pick up his father from hospital following surgery, and that he had had his wallet (impliedly containing proof of his identity) in his car where he could "have went . . . and grabbed it [sic]" to show it to Willis had he had time to do so. The proffered evidence tends to establish that Hariri threatened twice to sue Willis over the report, and that Hariri attached as an exhibit to one of his email messages to Shusterman a copy of his lawyer's business card as an indication that he would follow through on the threat. The proffered evidence further tends to establish that Hariri expressed himself willing to come to Shusterman's office and retake the exam immediately, in Shusterman's presence. The proffered evidence further tends to establish that Shusterman told Hariri that he would be permitted to retake the exam the following day, on

Page 8 - OPINION AND ORDER

December 9, 2014, in her presence.

As Hariri alleges and as defendants' proffer tends to establish, Hariri took a different version of the Chemistry 221 final exam on December 9, 2014, in Shusterman's presence.

According to defendants' proffer, Shusterman reported the foredescribed events in their entirety to PSU Senior Student Conduct Officer Domanic Thomas; Hariri alleges that he personally initiated efforts to "resolve" the situation through Thomas' offices. According to defendants' proffer, Thomas performed a preliminary investigation and concluded that there was enough evidence of Hariri's misconduct to warrant a student conduct hearing. It appears that Thomas notified Hariri that a hearing would be held on December 19, 2014, with Thomas himself serving as the hearing officer, and that Thomas arranged to meet with Hariri three days prior to the hearing, on December 16, 2014, to discuss the allegations against him.

On December 16, 2014, according to defendants' proffer, Thomas met with Hariri and discussed with him the evidence Hariri believed might tend to establish that he had been the person who wrote the exam of December 8, 2014, bearing his name. According to defendants' proffer, Hariri told Thomas that his cell phone records and public transportation surveillance footage recording his commute to campus via streetcar could be expected to support his story, but it appears that Hariri was unsuccessful in obtaining any such evidence.[1]  It does not appear that Hariri identified to Thomas with particularity any fellow students who might have witnessed him sitting for the exam on December 8, 2014.

---

[1]  Neither Hariri's allegations nor defendants' evidentiary proffer have any tendency to explain why Hariri might have believed surveillance footage would show him riding the streetcar to the PSU campus notwithstanding the assertion defendants' proffer tends to establish he made to Shusterman over email on December 8, 2014, that his wallet was in his car apparently easily accessible from the exam room at the time he took the exam.

Page 9 - OPINION AND ORDER

According to defendants' proffer, on December 19, 2014, Hariri did not attend the hearing before Officer Thomas, but rather instead emailed Thomas, Shusterman, PSU general counsel, and other PSU officials through his then-attorney, threatening to bring suit against Shusterman and demanding both an immediate dismissal of the charges against him and immediate award of an "A" grade in Chemistry 221. Defendants' proffer tends to establish that Hariri's counsel asserted to the PSU officials that on December 8, 2014, proof of Hariri's identity was "not available to Mr. Hariri because his license was [at that time] suspended and confiscated."[2]

Also according to defendants' proffer, on December 23, 2014, PSU assistant general counsel Krista Stearns responded via email to Hariri's counsel's message of December 19, 2014, requesting confirmation that Hariri did not intend to attend a hearing in connection with the charges against him, and that he preferred that PSU reach a final decision on the charges without consideration of any additional evidence Hariri might choose to offer them. By and through his counsel, according to defendants' proffer, later that same day Hariri responded in the affirmative that he did not intend to appear at any such hearing or to offer further evidence prior to a final disposition of the charges against him.

On December 30, 2014, according to defendants' proffer, Thomas formally concluded that a person other than Hariri wrote the December 8, 2014, exam bearing Hariri's name. In consequence, PSU suspended Hariri for one year for cheating, and left Hariri's "D" grade in

---

[2] Neither Hariri's allegations nor defendants' evidentiary proffer have any tendency to explain why Hariri might have asserted, as defendants' evidentiary proffer tends to establish that he did, that he could have retrieved proof of his identity from his car if he had had time to do so after completing the exam on December 8, 2014, if in fact no proof of his identity was available to him at that time, as defendants' proffer tends to establish his then-attorney asserted to the PSU officials.

Chemistry 221 undisturbed. On December 30, 2014, PSU advised Hariri of his right to appeal its decision, which Hariri did on January 4, 2015. On January 20, 2015, PSU Interim Vice President of Enrollment Management and Student Affairs Dan Fortmiller upheld the decision of December 30, 2014.

According to defendants' proffer, beginning in or around autumn of 2014, Hariri applied to several dental schools. According to defendants' proffer, and as Hariri alleges, all denied his applications. According to defendants' proffer, some of the rejections came before any of the schools saw any transcript with any grades from Fall 2009 or any other reference to such grades; all other such rejections came at a time when Hariri had informed the dental school by letter that he had retaken several courses in Fall 2009 and received "A" grades in all such retaken courses, but that there had been a "minor misunderstanding" in one of them that would soon "be resolved," following which he would send an updated transcript reflecting the "A" grades in the Fall 2009 courses.

Hariri alleges, and defendants appear to concede, that PSU receives at least some federal funding.

### III.    Material Procedural History

Hariri filed this action against PSU and Shusterman (in both her official and her individual capacities) on June 17, 2015, alleging both defendants' liability for race/color/national origin discrimination, violation of his substantive due process rights, and intentional infliction of emotional distress. On January 28, 2016, Hariri moved to compel PSU to produce documents in discovery. On March 1, 2016, prior to disposition of Hariri's motion to compel, defendants filed the motion for summary judgment that is now before the court.

On March 22, 2016, Hariri moved for extension of time to respond to defendants' dispositive motion, arguing that he could not adequately respond to defendants' evidence-based arguments prior to PSU's production of the documents within the scope of his then-pending motion to compel. I presided over a telephonic hearing and scheduling conference in connection with Hariri's pending motions on March 31, 2016, in the course of which the parties advised the court that they believed it would be judicially efficient for the court to determine the merits of the purely legal (or nearly purely legal) arguments raised by defendants' dispositive motion without first awaiting completion of discovery among the parties. In light of the parties' advice to the court, I directed the parties to proceed only in connection with those arguments to which Hariri was able to respond prior to completion of discovery, deferred proceedings in connection with defendants' evidence-based arguments until after resolution of the arguments to which Hariri was able to respond, and denied Hariri's motion to compel and motion for extension of time as moot, with leave to refile if appropriate at a later stage of these proceedings.

On April 8, 2016, Hariri responded to defendants' dispositive motion. By and through his opposition memorandum, Hariri indicated his intention to voluntarily withdraw his intentional infliction of emotional distress claim, expressly stipulating to its dismissal, and conceded that his substantive due process claim had been improvidently brought, indicating his intention at some later stage of these proceedings to seek leave to amend his pleading to state in its stead a procedural due process claim. Hariri indicated that, in connection with his discrimination claim, he would respond only to defendants' arguments that PSU and Shusterman in her official capacity are immune from suit under the Eleventh Amendment, that PSU is not liable to suit under Section 1983 as it is not a "person" for purposes of the statute, and that Shusterman in her

Page 12 - OPINION AND ORDER

individual capacity enjoys qualified immunity from suit.

Oral argument was held in connection with defendants' dispositive motion on April 25, 2016.  At oral argument, Hariri confirmed by and through his counsel that he stipulated to dismissal with prejudice of both his intentional infliction claim and his substantive due process claim, and further confirmed his intention to move at some future time for leave to amend his pleading to state a procedural due process claim.[3]  In addition, Hariri clarified for the first time in these proceedings, by and through his counsel, that his discrimination claim was intended to arise under Title VI only, and he stipulated to dismissal with prejudice of his discrimination claim to the extent it could be construed as pled under Section 1983.

For their part, defendants conceded at oral argument that (as will be discussed in greater detail below) their arguments regarding Eleventh Amendment immunity from suit and PSU's personhood for Section 1983 purposes were inapposite following Hariri's clarification that his discrimination claim arises only under Title VI.  Defendants nevertheless maintained that Shusterman is entitled to qualified immunity from suit in her individual capacity in connection with Hariri's discrimination claim and asserted the partially novel argument that Hariri did not adequately allege his own standing to bring a claim under Title VI.  In response to my inquiry as to whether a Title VI claim could lie against an individual defendant in that person's individual capacity, defense counsel responded in the negative, but nevertheless appeared to reserve the right to assert qualified immunity in the alternative to the argument that a lawsuit against an individual capacity defendant is not cognizable under Title VI.  In response, Hariri denied that

---

[3] Hariri further confirmed by and through his counsel that in moving for leave to amend his pleading, he would address by and through his supporting memorandum both the timeliness of his motion and the question of potential futility of the amendment at issue.

Shusterman could be entitled to qualified immunity in connection with the alleged deprivation of

his right to freedom from discrimination and asserted that his standing to bring a Title VI claim

could fairly be inferred from the allegations of his complaint.

## ANALYSIS

**I.     Hariri's Substantive Due Process and Intentional Infliction of Emotional Distress
        Claims (Claim 2, Claim 3); Hariri's Discrimination Claim (Claim 1) to the Extent
        Construable as Arising Under 42 U.S.C. § 1983**

Pursuant to Hariri's stipulations (discussed above), his substantive due process claim

(Claim 2) in its entirety, his intentional infliction of emotional distress claim (Claim 3) in its

entirety, and his discrimination claim (Claim 1) to the extent that it could be construed as arising

under Section 1983 rather than Title VI are dismissed with prejudice.

**II.    Hariri's Title VI Discrimination Claim (Claim 1)**

"Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d, provides in pertinent part that

'no person in the United States shall, on the ground of race, color, or national origin, be excluded

from participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial aid.'" *Fobbs v. Holy Cross Health Sys. Corp.*, 29

F.3d 1439, 1446 (9th Cir. 1994), *quoting* 42 U.S.C. § 2000d..

> To state a claim for damages under 42 U.S.C. § 2000d, *et seq.*, a plaintiff must
> allege that (1) the entity involved is engaging in racial discrimination; and (2) the
> entity involved is receiving federal financial assistance. *Wrenn v. Kansas*, 561 F.
> Supp. 1216, 1221 (D.C. Kan. 1983) (*citing Jackson v. Conway*, 476 F. Supp. 896,
> 903 (E.D. Mo. 1979)).  Although the plaintiff must prove intent at trial, it need not
> be pled in the complaint. *Wrenn*, 561 F. Supp. at 1221. *Compare Jackson*, 476 F.
> Supp. at 903 (no proof of intent is required if plaintiff seeks only injunctive
> relief).

> There is no requirement that plaintiff plead that he was an intended beneficiary of
> the federally funded program in which defendants are alleged to have participated.

Page 14 - OPINION AND ORDER

*Wrenn*, 561 F. Supp. at 1221. *Cf. Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226, 1234-35 (7th Cir. 1980) (In reviewing complaint under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which is modeled after and enforced in the same manner as 42 U.S.C. § 2000(d), court should not define program, and therefore identify its intended beneficiaries, in a "very narrow fashion."); *Byers v. Rockford Mass Transit Dist.*, 635 F. Supp. 1387, 1390 (N.D. Ill. 1986) ("As long as some federal funding is alleged in § 504 actions . . ., the program specificity issue is more properly the subject of a summary judgment motion.").

*Id.* at 1447 (internal modifications omitted).

### A. Defendants' Challenge to Hariri's Standing to Bring a Title VI Discrimination Claim

As noted above, at oral argument defendants challenged the adequacy of Hariri's pleading to establish that Hariri could be an intended beneficiary of the federal funding received by PSU. While Hariri took the position at oral argument that his status as an intended beneficiary could be inferred from his allegation that he was a student enrolled at PSU (and from the implicit presumption that any federal funding received by PSU was necessarily intended to benefit participants in PSU's educational programs), in the Ninth Circuit Title VI plaintiffs are not required to plead their status as intended beneficiaries, but rather must establish that status through proof at trial or at summary judgment. *See Fobbs*, 29 F.3d at 1447. Moreover, although defendants' motion is for summary judgment, the parties have agreed not to address evidence-based argument until a later stage of these proceedings, and defendants' challenge to Hariri's standing was not within the scope of the issues the parties agreed to address at this time. I therefore decline to enter summary judgment in defendants' favor on Hariri's discrimination claim on the asserted ground that he has not adequately pled his status as an intended beneficiary of PSU's federal funding. This issue is more properly addressed at a later stage of these proceedings, when both parties have had an opportunity to present material evidence and

Page 15 - OPINION AND ORDER

argument.

**B.      Hariri's Title VI Discrimination Claim to the Extent Alleged Against Shusterman**

The Ninth Circuit has observed that "§ 2000d . . . does not provide for monetary relief against individual defendants," *Braunstein v. Ariz. DOT*, 683 F.3d 1177, 1183 (9th Cir. 2012), and all courts to have addressed the question have found that there is no private right of action whatsoever under Title VI against individual employees or agents of entities receiving federal funding, including actions for purely injunctive relief, *see, e.g.*, *Shotz v. City of Plantation*, 344 F.3d 1161, 1169-1171 (11th Cir. 2003), *Aguirre v. San Leandro Police Dep't*, Case No. 10-04364 CW, 2011 U.S. Dist. LEXIS 17401, *7-8 (N.D. Cal. Feb. 22, 2011), *Johnson v. Telew*, Case No. 06-6297-AA, 2007 U.S. Dist. LEXIS 8621, *7 (D. Or. Feb. 2, 2007), *Clemes v. Del Norte County Unified Sch. Dist.*, Case No. C-93-1912 MHP (ENE), 1994 U.S. Dist. LEXIS 8625, *9-17 (N.D. Cal. Jun. 21, 1994), *see also Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). This conclusion follows from the plain language of the provision, which limits potential liability to entities that receive federal funds without extending liability to agents or employees of such entities, who do not receive funding or compensation directly from the federal government, *see Shotz*, 344 F.3d at 1169-1170, *Aguirre*, 2011 U.S. Dist. LEXIS 17401 at *7-8, *Johnson*, 2007 U.S. Dist. LEXIS 8621 at *7, *Clemes*, 1994 U.S. Dist. LEXIS 8625 *9-14, from the scope of Congressional authority under the Spending Clause of the United States Constitution to restrict the conduct of direct recipients of federal funds, which does not extend to the conduct of persons not receiving such funds directly, *see Shotz*, 344 F.3d at 1170-1171, *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-641 (1999) (applying the same reasoning in the Title IX

Page 16 - OPINION AND ORDER

context), and from the scope of the enforcement power the government enjoys under Title VI,

which extends only to funding recipients themselves, *see Shotz*, 344 F.3d at 1170.[4]  Because as a

matter of law Hariri cannot adduce evidence which could establish any basis for finding

Shusterman liable in her individual capacity in connection with his Title VI discrimination claim,

the discrimination claim (Claim 1) is dismissed with prejudice to the extent alleged against

Shusterman in her individual capacity.

The case law discussed above regarding Title VI lawsuits against individual employees or

agents of recipients of federal funding makes no distinction between such lawsuits against such

employees or agents in their individual versus their official capacities, implying that there can be

no liability against employees or agents of recipients of federal funding in either capacity.  The

Seventh Circuit has expressly considered the distinction, and has determined that Title VI claims

do not lie against employees or agents of recipients of federal funding, without regard to whether

such persons are named in their individual or official capacities.  *See Smith v. Metropolitan Sch.*

*Dist. Perry Twp.*, 128 F.3d 1014, 1020-1021 (7th Cir. 1997).  I agree with the *Smith* court and

with the implied reasoning of the case law discussed above suggesting that, because Shusterman

does not receive funding directly from the federal government even in her official capacity, no

grounds exist as a matter of law for finding her liable in her official capacity under Title VI.

Hariri's Title VI discrimination claim (Claim 1) is therefore likewise dismissed with prejudice to

the extent alleged against Shusterman in her official capacity.

---

[4]  Moreover, here the injunctive relief Hariri seeks is not cognizable as to Shusterman in her individual capacity:  in her individual capacity, Shusterman lacks any capacity to reverse Hariri's suspension, to expunge charges against him from his official academic record, or even to modify his grades.

## C.  Shusterman's Assertion of Qualified Immunity

In light of the dismissal with prejudice of each of Hariri's claims against Shusterman, Shusterman's assertion of qualified immunity in her individual capacity is moot. Defendants' motion is therefore denied as moot to the extent premised on Shusterman's qualified immunity from suit.

## D.  Eleventh Amendment Immunity and PSU's Personhood

It is well established that a state government or governmental body cannot be sued without its consent, pursuant to the Eleventh Amendment to the United States Constitution:

> That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that *the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given*: not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984) (emphasis original), quoting *Ex parte State of New York*, 256 U.S. 490, 497 (1921); *see also, e.g., id.* at 99, n.8 ("The limitation deprives federal courts of any jurisdiction to entertain such claims. . . ."); *Quillin v. Oregon*, 127 F.3d 1136, 1138 (9th Cir. 1997) ("in the absence of a waiver by Oregon of its Eleventh Amendment immunity, federal courts lack jurisdiction to review" claims against it). Eleventh Amendment immunity generally extends to suits brought by individuals against state agencies and state officials. *See, e.g., Seminole Tribe v. Fla.*, 517 U.S. 44, 54 (1996). The applicability of such immunity constitutes a question of subject matter jurisdiction. *See, e.g., McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

An exception to Eleventh Amendment immunity for suit provides that an individual's suit may go forward against a state official in federal court where the plaintiff seeks only "prospective, but not compensatory or other retrospective relief" in connection with a challenge to "the constitutionality of official conduct enforcing state law." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993); *see also Ex parte Young*, 209 U.S. 123 (1908). This exception, known as the "*Ex parte Young* doctrine," "is narrow: It applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past. . . ." *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146 (citations omitted).

It is relatively well established that states may properly assert Eleventh Amendment immunity in connection with Section 1983 claims, and that state officials may do so in connection with Section 1983 claims for money damages. *See Quern v. Jordan*, 440 U.S. 332, 342-345 (1979), *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-102 (1984); *Braunstein v. Ariz. DOT*, 683 F.3d 1177, 1188 (9th Cir. 2012); *Peters v. Lieuallen*, 693 F.2d 966, 970 (9th Cir. 1982).

However, it is also well established that Congress has in fact abrogated Eleventh Amendment immunity for purposes of claims for damages arising under Title VI, applicable to bodies receiving funding from federal sources. *See* 42 U.S.C. sec 2000d-7(a)(1); *see also Braunstein*, 683 F.3d at 1189. In consequence, defendants were correct to concede that their arguments premised on the Eleventh Amendment immunity from suit of PSU and of Shusterman in her official capacity are inapposite to Hariri's discrimination claim, which arises under title VI rather than under Section 1983.

Page 19 - OPINION AND ORDER

The same is true of defendants' arguments regarding PSU's status as a "person."  The

United States Supreme Court has held that states are not "persons" for purposes of Section 1983,

and in consequence may not be found liable under Section 1983.  *Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 63-71 (1989).  Moreover, it appears likely that PSU would be deemed an

"arm" of the State of Oregon for purposes of determining whether PSU could be a person for

Section 1983 purposes.  *See, e.g., Rounds v. Oregon State Bd. of Higher Educ.*, 166 F.3d 1032,

1035 (9th Cir. 1999) (The University of Oregon is "an arm of the state" for Eleventh Amendment

purposes because it is a state institution subject to the jurisdiction of Oregon's Board of Higher

Education performing the governmental function of providing education services to state

citizens); *Hagel v. Portland State Univ.*, 237 Fed. Appx. 146, 147-148 (9th Cir. 2007) (PSU is an

"arm of the state" for Eleventh Amendment purposes, for the same reasons) (unpublished

disposition).  However, there is no requirement that a Title VI defendant be cognizable as a

"person," and (as defendants conceded at oral argument) defendants' arguments regarding PSU's

personhood are therefore inapposite to Hariri's discrimination claim.

For the foregoing reasons, defendants' motion is denied with leave to refile if

appropriate at a later stage of these proceedings to the extent premised on the Eleventh

Amendment immunity from suit of PSU or of Shusterman in her official capacity, and to the

extent premised on PSU's status as a "person."

## III.    Deferred Proceedings

Proceedings in connection with all other arguments raised by defendants' motion are

deferred.  By and through a separate order, a telephonic status conference will be set for the

purpose of scheduling further briefing and a hearing in connection with those arguments.

Page 20 - OPINION AND ORDER

## CONCLUSION

For the reasons set forth above, defendants' motion (#20) for summary judgment is granted in part and denied in part, and further proceedings in connection with the remaining part are deferred, as follows:  (i) the motion is granted as to Hariri's substantive due process and intentional infliction claims, and those claims are in consequence dismissed with prejudice, (ii) the motion is granted as to Hariri's discrimination claim to the extent it may be construed as arising under Section 1983 and to the extent it is alleged against Shusterman in any capacity, and that claim is in consequence dismissed with prejudice to both those extents, (iii) the motion is denied on its merits with leave to refile if appropriate at a later stage of these proceedings to the extent it addresses the immunity of PSU or of Shusterman in her official capacity from suit under the Eleventh Amendment and to the extent it addresses PSU's personhood for purposes of Section 1983, (iv) the motion is denied as moot with leave to refile if appropriate at a later stage of these proceedings to the extent it addresses Shusterman's assertion of qualified immunity in her individual capacity, and (v) proceedings in connection with the arguments raised by and through defendants' motion are otherwise deferred as discussed above.

Dated this 5th day of May, 2016.

Honorable Paul Papak
United States Magistrate Judge