IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOHAMAD HARIRI,

        Plaintiff,

                                  3:15-CV-1076-PK

v.                                 OPINION AND
                                     ORDER

PORTLAND STATE UNIVERSITY,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff Mohamad Hariri filed this action against Portland State University ("PSU") and

PSU professor Gwen Shusterman on June 17, 2015. By and through his complaint as originally

filed, Hariri alleged that he had been baselessly accused of academic misconduct (that is, of

sending another person to take the final examination in Shusterman's Chemistry 221 class under

Hariri's name on December 8, 2014), in consequence of which he had been suspended for one

year from attendance at PSU and had received a lower than deserved grade in one of his classes.

Arising out of the foregoing, Hariri alleged the liability of both PSU and Shusterman under 42

U.S.C. § 1983 for race, color, and/or national origin discrimination in violation of his rights

under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, under Section 1983 for

violation of his Fourteenth Amendment substantive due process rights, and under Oregon

common law for intentional infliction of emotional distress.

Effective July 12, 2016, following oral argument in connection with a meritorious motion

for partial summary judgment filed by PSU and Shusterman, Hariri amended his complaint,

abandoning his claims against Shusterman, clarifying that his discrimination claim arose under

Title VI rather than Section 1983, abandoning his substantive due process claim and his

intentional infliction claim, and adding new claims for violation of his procedural due process

rights and for negligence. Specifically, by and through his amended complaint, Hariri alleged

PSU's liability under Title VI for unlawful discrimination based on race, color, and/or national

origin, under Section 1983 for the violation of his Fourteenth Amendment procedural due

process rights, and under Oregon common law for negligence. On March 2, 2017, I granted

summary judgment in PSU's favor as to all of Hariri's claims against it. On March 30, 2017,

Hariri filed notice that he had appealed from judgment in this action to the Ninth Circuit Court of

Appeals.

Now before the court is PSU's motion (#70) for award of its attorney fees and costs

reasonably incurred in connection with litigating its successful defense against Hariri's Title VI and Section 1983 claims.[1]  I have considered the motion and all of the pleadings and papers on file.  For the reasons set forth below, PSU's motion is granted, and PSU is awarded its attorney fees in the amount of $76,727.00 and its costs in the amount of $1,831.40.

## ANALYSIS

### I.    PSU's Entitlement to Award of Attorney Fees and Costs

PSU moves for award of its attorney fees and costs pursuant to 42 U.S.C. § 1988(b).  In relevant part, Section 1988(b) provides as follows:

> In any action or proceeding to enforce a provision of section[] . . . 1983. . . of . . . title [42], . . . [or] title VI of the Civil Rights Act of 1964 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . .

42 U.S.C. sec 1988(b).  Although it is the unusual case for a court to exercise its discretion under Section 1988(b) to award attorney fees in favor of a prevailing civil rights defendant, it is a well-settled matter of United States Supreme Court jurisprudence that a district court may properly so exercise its discretion "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421 (1978); *see also Fox v. Vice*, 563 U.S. 826, 829 (2011) (attorney fees may be awarded to a prevailing civil rights defendant pursuant to Section 1988 "if the plaintiff's suit is frivolous").

In connection with PSU's motion for summary judgment filed October 21, 2016, I noted that "[t]he evidence that the examination of December 8, 2014, was written by a person other

---

[1]  No party has requested that this court defer disposition of PSU's fee petition pending the outcome of Hariri's appeal.

than Hariri is extremely strong, and the contrary evidence that the examination was written by Hariri is both thin and highly implausible." Opinion (#63) and Order dated March 2, 2017, at 14-15. For purposes of determining PSU's entitlement to summary judgment on Hariri's claims I nevertheless assumed *arguendo*, expressly without making any finding of fact to that effect, that despite the clear paucity and implausibility of Hariri's proffered evidence a jury:

> could reasonably credit Hariri's testimony that he wrote the examination of December 8, 2014, could reasonably disbelieve [the] contrary testimony [of Shusterman's teaching assistant], and could reasonably disbelieve the opinion testimony of PSU's forensic expert that the dissimilarities between Hariri's handwriting and the handwriting of the person who wrote the examination of December 8, 2014, were such that there is no possibility that the same person wrote both.

*Id.* at 15. On that *arguendo* assumption I found "for purposes of PSU's motion for summary judgment only" – and in light of the mandate of Federal Civil Procedure Rule 56 that I consider the evidence in the light most favorable to the non-moving party – that Hariri wrote the examination. *Id.* In connection with that finding, I expressly disavowed any possible suggestion "that, in the event Hariri's claims were submitted to a jury and the jury were to find on the basis of the evidence of record that Hariri wrote the examination of December 8, 2014, I would decline to overturn the jury's finding pursuant to Federal Civil Procedure Rule 50(b)." *Id.* Even on that *arguendo* assumption, I found under Rule 56 that Hariri's claims against PSU were without merit.

Here, in connection with PSU's motion (#70) for award of its attorney fees and costs, I am not required to interpret the evidence of record in the light most favorable to Hariri, but rather enjoy discretion to make logical, plausible factual determinations supported by the evidence. *See Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *see also United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) *(en banc)*; *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Under the legal standard governing motions for attorney fees, I find that Hariri's Title VI and Section 1983 claims asserted herein were uniformly frivolous, unreasonable, and without foundation from the very inception of this action. Above all else, the evidence is overwhelming that Hariri did in fact commit the serious act of academic misconduct for which he received the complained-of discipline, namely sending another student to write his final examination in Shusterman's Chemistry 221 class. That evidence includes, but is not limited to, (i) the unequivocal deposition testimony of Shusterman's teaching assistant Dillon Willis, who assisted Shusterman in proctoring the exam, that a man who did not physically resemble Hariri attempted to hand in an exam bearing Hariri's name, claimed to be Hariri when challenged, and departed the exam room rather than discuss his identity with Shusterman after being requested to do so, (ii) the unequivocal opinion testimony of a forensic document examiner and handwriting specialist that the possibility that the examination at issue had been written by Hariri was entirely eliminated due to the complete absence of forensic similarities between Hariri's handwriting and the hand in which the exam was written, (iii) the absence of any plausible evidence to contradict the testimony of either Willis or the forensic expert, and (iv) various inconsistencies in Hariri's assertions regarding the incident.[2] In the absence of any plausible evidence to support the conclusion that Hariri might have written the examination he was accused of sending another student to write in his name, I cannot find for purposes of PSU's fee petition that there is any possibility that Hariri was unaware at any material time that his Title VI and Section 1983 claims herein lacked any grounding in fact. Because I cannot avoid the conclusion that Hariri was at all

---

[2] The foredescribed evidence is discussed in detail in my Opinion (#63) and Order dated March 2, 2017.

times aware that he had committed the infraction for which he received the complained-of discipline, I find that his Title VI and Section 1983 claims herein were necessarily frivolous for purposes of Section 1988(b). As such, under Section 1988(b), I may properly exercise discretion to award PSU its fees.

I further find that it is in the interests of justice so to exercise my discretion. PSU is a public institution, and Hariri's election to pursue his frivolous claims against it caused it to expend public funds that could better be spent toward the maintenance of PSU's educational programs and services. Moreover, to permit Hariri to go unsanctioned for seeking a monetary recovery from a public institution of higher learning on the basis of patently frivolous claims would be tantamount to encouraging further such claims and further waste of public resources to no just, beneficial, or otherwise desirable end. I therefore find that PSU is entitled to award of its attorney fees and costs reasonably incurred in connection with defending Hariri's Title VI and Section 1983 claims.

## II.  Attorney Fees

### A.  The Lodestar

Determination of a reasonable attorney's fee begins with the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986). Here, PSU requests award of $82,415.00 from Hariri. PSU was initially represented for purposes of this dispute by the law firm Slinde Nelson Stanford (principally by attorney Darian A. Stanford), and later by the law firm Miller Nash Graham & Dunn (principally by attorney P.K. Runkles-Pearson). PSU requests $48,580.00 in fees incurred by the Slinde Nelson legal team,

and $33,835.00 in fees incurred by the Miller Nash legal team, or a total of $82,415.00.

As to fees incurred by the Slinde Nelson legal team, PSU specifically seeks compensation for 167.1 hours of attorney Stanford's time at an hourly rate of $225 (or $37,597.50), 23.9 hours of time expended by a timekeeper named Selma Williams (presumably a paralegal, but PSU provides no evidence as to Williams' qualifications or credentials) at an hourly rate of $125 (or $2,987.50), 1.4 hours of time expended by a timekeeper identified only as "STR" at an hourly rate of $250, 9.7 hours of time expended by a timekeeper named David Hutchinson (I take judicial notice that the Oregon State Bar lists an attorney named David Blake Hutchinson as having been a member of the bar since 2015 and as being employed by Slinde Nelson, *see* Fed. R. Evid. 201) at an hourly rate of $200 (or $1,940.00), 28.9 hours of time expended by a timekeeper named Daniel Lerner (I take judicial notice that the Oregon State Bar lists an attorney named Daniel H. Lerner as having been a member of the bar since 2007 and as being employed by Slinde Nelson, *see id.*) at an hourly rate of $200 (or $5,780.00), and 0.2 hours of time expended by a timekeeper named Rehan Harrach (presumably a paralegal, but PSU provides no evidence as to Harrach's qualifications or credentials) at an hourly rate of $125 (or $25.00).[3] As to fees incurred by the Miller Nash legal team, PSU specifically seeks compensation for 79.0 hours of attorney Runkles-Pearson's time at an hourly rate of $365 (or $28,835.00), 8.1 hours of attorney Sharae M. Wheeler's time at an hourly rate of $305 (or $2,470.50), 1.5 hours of attorney John Clarke's time at an hourly rate of $270 (or $405.00), 5.7 hours of attorney Ivan Resendiz

_____

[3] I calculate the sum of the fees requested in connection with the Slinde Nelson timekeepers as $48,680.00 rather than the requested $48,580.00. I construe PSU's request as a waiver of any fee award in connection with the Slinde Nelson team's time expenditures in excess of $48,580.00.

Gutierrez' time at an hourly rate of $270 and 2.5 hours of Gutierrez' time at an hourly rate of $200 (characterized as a "paralegal" rate) (or $2,039.00), and 3.3 hours of paralegal Faustina Ash's time at an hourly rate of $195 (or $643.50).[4] In support of its fee petition, PSU offers declaration testimony regarding the number of years attorneys Stanford and Runkles-Pearson have practiced law, declaration testimony indicating that Miller Nash customarily charges a higher rate for each of its timekeepers than is requested here, and relevant portions of the Oregon State Bar 2012 Economic Survey (the "2012 OSB Economic Survey") providing information as to the hourly rates charged by Portland-area attorneys in 2011 broken down by years spent in the practice of law.

### 1.    Hours Reasonably Expended

Hariri does not challenge the reasonableness of any of the time expenditures in connection with which PSU requests compensation. Nevertheless, this court is obliged to scrutinize PSU's fee petition independently to determine its reasonableness. *See, e.g., Gates v. Deukmejian*, 987 F.2d 1392, 1400-1401 (9th Cir. 1992).

It is the fee claimant's burden to demonstrate that the number of hours spent was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("plaintiffs bear the burden of showing the time spent

---

[4] I calculate the sum of the fees requested in connection with the Miller Nash timekeepers as $34,393.00 rather than the requested $33,835.00. I construe PSU's request as a waiver of any fee award in connection with the Miller Nash team's time expenditures in excess of $33,835.00.

and that it was reasonably necessary to the successful prosecution of their . . . claims); *Chalmers v. Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (district court determines numbers of hours reasonably expended in furtherance of the successful aspects of a litigation). Moreover, it is likewise the fee claimant's burden to "submit evidence supporting the hours worked . . . . Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433; *see also, e.g.*, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-946 (9th Cir. 2007) (same).

For the reasons set forth below, I find that the record supports an award of compensation for 166.8 hours of attorney Stanford's time, 9.7 hours of attorney Hutchinson's time, 28.0 hours of attorney Lerner's time, 14.5 hours of presumed paralegal Williams' time, 0.2 hours of presumed paralegal Harrach's time, 79.0 hours of attorney Runkles-Pearson's time, 8.1 hours of attorney Wheeler's time, 1.5 hours of attorney Clarke's time, 8.2 hours of attorney Gutierrez' time, and 3.3 hours of paralegal Ash's time.

### a. Relatedness of Tasks

It is the fee claimant's burden to demonstrate that all of the time for which compensation is sought was "reasonably necessary" to the litigation and that claimant's counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995) (lodestar excludes hours not reasonably expended on the litigation by the prevailing party); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) (plaintiff claimants "bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their . . . claims"); *Chalmers*

*v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (district court determines numbers of hours reasonably expended in furtherance of the successful aspects of a litigation). Reasonably expended hours include only those expended in the litigation of claims in connection with which the prevailing party was successful, or claims closely related to such claims. *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). Moreover, it appears clear that under Section 1988(b), fees may be awarded only in connection with time spent litigating civil rights claims identified in the statute, and not with time spent litigating related claims. *See Fox*, 563 U.S. at 829.

Here, analysis of the time records submitted in support of PSU's fee petition establishes that PSU seeks compensation only for time spent defending Hariri's Title VI and Section 1983 claims. In fact, in the exercise of exemplary billing judgment, the Miller Nash team has excluded from PSU's fee request approximately one third of their expended hours, representing time spent litigating Hariri's negligence claim, time spent in connection with the transition of PSU's representation from Slinde Nelson to Miller Nash, and other matters arguably not appropriately taxable to Hariri under Section 1988(b). The Slinde Nelson team has also excluded from PSU's fee request hours spent on the transition to Miller Nash and other matters arguably not appropriately taxable to Hariri. No grounds exist for excluding any further time expenditures from the lodestar calculation on grounds of insufficient relatedness of the tasks performed.

**b.    Adequacy of Specification of Tasks**

As noted above, claimants "bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their . . . claims." *Frank Music*, 886 F.2d at 1557. As such, expenditures of time in connection with tasks not sufficiently specified to permit

the court to determine whether they were reasonably necessary to litigation of the plaintiff claimant's claims are properly excluded from the lodestar calculation. Analysis of the submitted time records establishes that all time expenditures in connection with which PSU seeks compensation were adequately specified.

### c.  Duplicative Time Expenditures

The courts of this district routinely exclude from the lodestar calculation any time entries indicating that more than one lawyer performed the same task. *See, e.g.*, *Taylor v. Albina Cmty. Bank*, Case No. CV-00-1089-ST, 2002 US Dist LEXIS 25580, *11-12 (D. Or. Oct. 2, 2002). Specifically, the courts of this district have held that:

> A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent. Instead it can only shift the reasonable attorney fee expended. A fee that is "not excessive" may still be unreasonable. When attorneys hold a telephone or personal conference, good "billing judgment" mandates that only one attorney should bill that conference to the client, not both attorneys. The same good "billing judgment" requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument.

*Nat'l Warranty Ins. Co. v. Greenfield*, Case No. CV-97-1654-ST, 2001 US Dist LEXIS 7763, *14 (D. Or. Feb. 8, 2001).

Analysis of the submitted time records establishes that PSU seeks compensation from two different Slinde Nelson timekeepers in connection with attorney conferences taking place on April 11 and 15, 2016. It is appropriate to exclude from the lodestar calculation the duplicative time expenditures of the timekeepers for which the lower hourly rate is requested. Accordingly, I exclude from the lodestar calculation 0.3 hours expended by attorney Lerner on April 11, 2016, and 0.6 hours expended by Lerner on April 15, 2016.

#### d. Clerical Tasks

The courts of this district routinely disallow time entries in connection with tasks that appear to be primarily clerical in nature. *See Frevach Land Co. v. Multnomah County*, Case No. CV-99-1295-HU, 2001 US Dist LEXIS 22255, *36-38 (D. Or. 2001); *Jacobs v. Local Union 48, IBEW*, Case No. 94-1544-JE, 2002 US Dist LEXIS 6564, 11 (D. Or. March 21, 2002). The District of Oregon has stated that:

> It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

*Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, Case No. 00-1693-PA, 2003 US Dist. LEXIS 25830, 5, n. 3 (D. Or. Oct. 27, 2003), *citing Missouri v. Jenkins*, 491 U.S. 274, 288, n. 10 (1989).

Analysis of the submitted time records establishes that PSU seeks compensation for a total of 0.3 hours of Stanford's time expended on clerical tasks on July 17, and September 9, 2015. Those hours are excluded from the lodestar calculation.

#### e. Block Billing

The courts of the District of Oregon have for many years acknowledged the problem of "block billing" attorney time expenditures for fee petition purposes. *See, e.g., Frevach*, 2001 US Dist LEXIS 22255 at *29-34. For purposes of fee petitions filed in the District of Oregon, block billing is defined as any time entry of three or more hours either containing four or more tasks, or in the alternative containing two or more tasks, where at least one of the tasks could have taken anywhere from a small to a substantial amount of time. *See, e.g., Hells Canyon Pres. Council v.*

*United States Forest Serv.*, Case No. 00-755-HU, 2004 US Dist LEXIS 17113, *21-22 (D. Or. Aug. 18, 2004); *Taylor*, 2002 US Dist LEXIS 25580 at *10-11; *Frevach*, 2001 US Dist LEXIS 22255 at *34. Notwithstanding the foregoing, closely related but discretely identified block-billed tasks will be aggregated into a single task for purposes of determining whether the District of Oregon's prohibition against block billing has been violated. *See, e.g., Oberdorfer v. Glickman*, Case No. 98-1588-HU, 2001 US Dist LEXIS 14677, *14, n. 2 (D. Or. Sep. 14, 2001). Because the practice of block billing systematically impairs the court's ability to ascertain the reasonableness of an attorney's time expenditures, the courts of the District of Oregon have of long standing adopted the practice of eliminating block-billed time entries in their entirety from the lodestar calculation. *See, e.g., Hells Canyon*, 2004 US Dist LEXIS 17113 at *21-22. The facts of this case present no compelling grounds for deviating from that practice here.

Analysis of the submitted time records establishes that PSU seeks compensation in connection with several instances block-billed time expenditures by Stanford. However, the tasks performed in each instance appear to be sufficiently closely related that the time expenditures may properly be aggregated into a single task. I therefore do not exclude any of Stanford's time expenditures from the lodestar calculation on the basis of improper block billing.

PSU seeks compensation for 9.4 hours of presumed paralegal Williams' time expended on March 1, 2016. Those hours are block-billed, and the tasks Williams performed on that date are not clearly closely related. Accordingly, Williams' time expenditures of March 1, 2016, are excluded from the lodestar calculation.

### 2.    Reasonable Rate

It is well settled within the Ninth Circuit and in this District that:

> The prevailing market rate in the community is indicative of a reasonable hourly rate. . . . The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.

*Jordan v. Multnomah County*, 815 F.2d 1258, 1262-1263 (9th Cir. 1987), *citing Blum v. Stenson*, 465 U.S. 886, 895-897, 895 n. 11 (U.S. 1984). As noted above, PSU requests that Stanford's time be compensated at an hourly rate of $225, STR's time be compensated at an hourly rate of $250, Hutchinson's time be compensated at an hourly rate of $200, Lerner's time be compensated at an hourly rate of $200, Williams' time be compensated at an hourly rate of $125, Harrach's time be compensated at an hourly rate of $125, Runkles-Pearson's time be compensated at an hourly rate of $365, Wheeler's time be compensated at an hourly rate of $305, Clarke's time be compensated at an hourly rate of $270, Gutierrez' time be compensated at an hourly rate of $270 or $200, depending on the task to be performed, and Ash's time be compensated at an hourly rate of $195. Hariri does not object to any of the requested hourly rates.

Stanford has been in the practice of law since 1999. In 2011, the average hourly rate charged by Portland-area attorneys of 16-20 years of experience was $250. *See* 2012 OSB Economic Survey. As Stanford's requested rate of $225 for time expended in 2015 is lower than the average charged by attorneys of his experience in 2011, the requested rate for Stanford's time expenditures is reasonable.

No information is available as to the timekeeper identified as STR. Because it is impossible on the basis of PSU's evidentiary submissions to determine what hourly rate for STR's time could be reasonable, I exclude STR's time expenditure of 1.4 hours from the lodestar calculation.

Hutchinson has been in the practice of law since 2015. In 2011, the average hourly rate charged by Portland-area attorneys of 0-3 years of experience was $175. *See* 2012 OSB Economic Survey. Adjusting that rate for inflation to 2016 dollars yields an average 2016 rate for attorneys of his experience of $188.27. Without suggesting that Hutchinson's requested rate is generally unreasonable, for purposes of taxing PSU's party-opponent with its legal fees I do not find that the work required to defend PSU against Hariri's Title VI and Section 1983 claims warrants departure from the median rate. I therefore find that $190 is the reasonable hourly rate at which Hariri may be taxed with Hutchinson's time expenditures.

Lerner has been in the practice of law since 2007. In 2011, the average hourly rate charged by Portland-area attorneys of 7-9 years of experience was $250. See 2012 OSB Economic Survey. As Lerner's requested rate of $200 for time expended in 2015 is lower than the average charged by attorneys of his experience in 2011, the requested rate for Lerner's time expenditures is reasonable.

Runkles-Pearson has been in the practice of law since 2002. In 2011, the average hourly rate charged by Portland-area attorneys of 13-15 years of experience was $300. *See* 2012 OSB Economic Survey. Adjusting that rate for inflation to 2016 dollars yields an average 2016 rate for attorneys of her experience of $322.74. While I do not suggest that it would be unreasonable for Runkles-Pearson to charge her client her requested rate of $365 or her customary rate of $420, for purposes of taxing PSU's party-opponent with its legal fees I do not find that the work required to defend PSU against Hariri's Title VI and Section 1983 claims warrants departure from the median rate. I therefore find that the reasonable hourly rate at which Hariri may be taxed in connection with Runkles-Pearson's time expenditures is $325.

I take judicial notice that Oregon State Bar records indicate that Wheeler has been in the practice of law since 2011. *See* Fed. R. Evid. 201. In 2011, the average hourly rate charged by Portland-area attorneys of 4-6 years of experience was $218. See 2012 OSB Economic Survey. Adjusting that rate for inflation to 2016 dollars yields an average 2016 rate for attorneys of her experience of $234.52. Without suggesting that Wheler's requested or customary rates are generally unreasonable, as noted above, for purposes of taxing PSU's party-opponent with its legal fees I do not find that the work required to defend PSU against Hariri's Title VI and Section 1983 claims warrants departure from the median rate. I therefore find that the reasonable hourly rate at which Hariri may be taxed in connection with Wheeler's time expenditures is $235.

I take judicial notice that Oregon State Bar records indicate that Clarke and Gutierrez have both been in the practice of law since 2015. See Fed. R. Evid. 201. In 2011, as noted above, the average hourly rate charged by Portland-area attorneys of 0-3 years of experience was $175. See 2012 OSB Economic Survey. Adjusting that rate for inflation to 2016 dollars yields an average 2016 rate for attorneys of their experience of $188.27. Without suggesting that either Clarke's or Gutierrez' requested or customary rates are generally unreasonable, as noted above, for purposes of taxing PSU's party-opponent with its legal fees I do not find that the work required to defend PSU against Hariri's Title VI and Section 1983 claims warrants departure from the median rate. I therefore find that the reasonable hourly rate at which Hariri may be taxed in connection with Clarke's time expenditures and with Gutierrez' time expenditures is $190.

No party has submitted evidence regarding the customary hourly rates charged for the time expenditures of Portland-area paralegals. As noted above, the average hourly rate charged

by Portland-area attorneys of 0-3 years of experience in 2011 was $175, or approximately $190 in 2015 dollars. Because it is unreasonable to tax a party opponent with compensation for paralegal time expenditures at a greater rate than can reasonably be applied to attorney time expenditures, I find that the maximum hourly rate at which Hariri may reasonably be taxed with the time expenditures of paralegals is $150. By that metric, the requested rate of $125 is reasonable for presumed paralegals Williams and Harrach, and Hariri may reasonably be taxed for paralegal Ash's time expenditures at an hourly rate of $150.

### 3. Calculation and Adjustment of the Lodestar Figure

The product of the 166.8 hours reasonably expended by attorney Stanford and his reasonable hourly rate of $225 is $37,530.00, the product of the 9.7 hours reasonably expended by attorney Hutchinson and his reasonable hourly rate of $190 is $1,843.00, the product of the 28.0 hours reasonably expended by attorney Lerner and his reasonable hourly rate of $200 is $5,600.00, the product of the 79.0 hours reasonably expended by attorney Runkles-Pearson and her reasonable hourly rate of $325 is $25,675.00, the product of the 8.1 hours reasonably expended by attorney Wheeler and her reasonable hourly rate of $235 is $1,903.50, the product of the 1.5 hours reasonably expended by attorney Clarke and his reasonable hourly rate of $190 is $285.00, and the product of the 8.2 hours reasonably expended by attorney Gutierrez and his reasonable hourly rate of $190 is $1,558.00. The product of the 14.5 hours reasonably expended by presumed paralegal Williams and her reasonable hourly rate of $125 is $1,812.50, the product of the 0.2 hours reasonably expended by presumed paralegal Harrach and his reasonable hourly rate of $125 is $25.00, and the product of the 3.3 hours reasonably expended by paralegal Ash and her reasonable hourly rate of $150 is $495.00. The sum of the products involving Slinde

Nelson timekeepers is $46,810.50, and the sum of the products involving Miller Nash timekeepers is $29,916.50. Thus, the lodestar calculation results in a total of $76,727.00 in attorney fees reasonably incurred in connection with defending Hariri's Title VI and Section 1983 claims against PSU.

It is the fee claimant's burden to prove the reasonableness of the lodestar amount. *See Pennsylvania*, 478 U.S. at 563-564. The factors that may properly be considered in determining and evaluating the lodestar figure include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, e.g., Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975). Only those factors which are applicable need be addressed. *See, e.g., Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir. 1983).

It is within the discretion of this court to adjust the lodestar figure either: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, *see Hensley*, 461 U.S. at 435-36 (1983); or (2) upward in "rare" and "exceptional" cases, *Pennsylvania*, 478 U.S. at 565. The presumption, however, is that the lodestar figure represents a reasonable fee. *See Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987).

I do not find that any adjustment of the lodestar figure is warranted here. I therefore find

that PSU is entitled to award of its reasonably incurred attorney fees in the lodestar amount of $76,727.00.

## III.    Costs

Pursuant to both Section 1988(b) and Federal Civil Procedure Rule 54, PSU is entitled to award of its costs, to the extent those costs are taxable to a party opponent under 28 U.S.C. § 1920. PSU claims a total of $1,831.40 it characterizes as compensable, and Hariri does not object to any of the claimed costs. Analysis of the costs at issue establishes that they may properly be taxed to Hariri. I therefore find that PSU is entitled to award of $1,831.40 in costs.

## CONCLUSION

For the reasons set forth above, PSU's motion (#70) for attorney fees and costs is granted, and PSU is awarded its attorney fees in the total amount of $76,727.00 and its costs in the total amount of $1,831.40.


Dated this 5th day of July, 2017.

Honorable Paul Papak
United States Magistrate Judge